T.C. Memo. 2002-21

UNITED STATES TAX COURT

GARRY D. ACUNCIUS AND DANALENE L. ACUNCIUS,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3752-00.              Filed January 22, 2002.

Lawrence R. Jones, Jr., and Henry J. Lischer, Jr., for

petitioners.[1]

James F. Prothro, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined a $9,290 deficiency

and a $1,858 accuracy-related penalty pursuant to section 6662(a)

---

[1]  Petitioners were pro se during the trial and for the
opening brief.

with respect to petitioners' Federal income tax for 1997.[2]

The issues for decision are: (1) Whether petitioners had income from discharge of indebtedness of $32,000 in 1997;[3] and (2) whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) and (d)(1).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time they filed their petition, petitioners resided in Cresson, Texas.

On October 22, 1992, petitioners signed a promissory note with BankTEXAS, N.A. (BankTEXAS), for a loan in the amount of $32,000. With regard to this loan, on March 26, 1992, petitioners had signed a commercial security agreement with BankTEXAS. This agreement gave BankTEXAS a security interest in the listed collateral, which included boats and horses.[4]

Petitioners took out the loan in order to start a business, Southwest Concepts, which consisted of an art gallery and a horse training facility. In 1992, because of problems with the

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

[3] Respondent conceded on brief the portion of the adjustment attributable to the canceled commercial loan interest in the amount of $14,395, pursuant to sec. 108(e)(2).

[4] In 1993, petitioners sold the boats in violation of the security agreement.

facility, a bank officer advised petitioners to move. Petitioners moved and closed the business in 1992. As a result, petitioners lost their investment in the venture.

When the business closed, petitioners returned the items that artists had brought to the gallery on consignment and sold other business assets at wholesale prices to pay off expenses. In addition, petitioners sold their livestock at cost. Mrs. Acuncius took a job as office help in a furniture company at a lower income than her income from Southwest Concepts, and Mr. Acuncius was unable to find steady work.

As a result, petitioners were unable to make payments on their house. Their house was foreclosed on in 1993 or 1994. After the house was foreclosed on, petitioners moved in with their daughter, then to an apartment in Granbury, Texas, and then to a ranch in Oklahoma, where they worked as caretakers. By 1997, petitioners were renting a modular home near Cresson, Texas. Petitioners did not have their mail forwarded each time they moved.

On April 15, 1993, BankTEXAS sent petitioners a notice that the note of $32,000 would be due on April 20, 1993. Petitioners did not receive this notice because they were no longer residing at the address on the notice. BankTEXAS continued to mail notices to petitioners at its address of record--the address on the loan application.

Prior to 1997, BankTEXAS made efforts to collect the loan from petitioners by renewing the note several times, making the repayment structure easier, collecting interest only, and unsuccessfully attempting to collect the collateral. On April 20, 1997, BankTEXAS deemed the loan to be uncollectible and discharged the loan in the amount of $32,000 and $14,395 in accrued interest. Thereafter, BankTEXAS reported the debt forgiven to the Internal Revenue Service on a Form 1099-C for 1997.

During 1997, Mrs. Acuncius was an art teacher in a public school and Mr. Acuncius was a horse trainer. In addition, Mrs. Acuncius pursued a Master's degree in education, and Mr. Acuncius pursued a Master's degree in agricultural development in the hope of increasing their earning potential and obtaining better jobs. In 1997, petitioners owned the following assets:

| Asset | Value |
|---|---|
| Livestock | Less than $5,000 |
| 1979 Jeep | 500 |
| 1986 Ford truck | 500 |
| Household goods | 1,000 to 1,500 |
| Jewelry | Less than 1,000 |

In 1997, petitioners owed the following liabilities:

| Liability | Amount |
|---|---|
| BankTEXAS loan | $32,000 |
| Accrued interest on loan | 14,396 |
| Teaching certification | 4,000 |
| Master's degree student loan: Mrs. Acuncius | 8,751 |
| Master's degree student loan: Mr. Acuncius | 17,269 |
| 1991 Income taxes | 700 |

| 1992 Income taxes | 2,000 |
| 1994 Income taxes | 5,000 |

Respondent determined that petitioners were liable for income from discharge of indebtedness of $32,000 in 1997 and an accuracy-related penalty of $1,858 due to a substantial understatement of tax. When petitioners received the notice of deficiency, this was the first time that they were aware that the loan had been discharged in 1997 because they had not received any of the notices from BankTEXAS.

## OPINION

I. Income from the Discharge of Indebtedness

A. Burden of Proof

Section 7491 applies to this case because the examination in this case began after July 22, 1998. Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 685, 727. We do not find, however, that the resolution of this case depends on which party has the burden of proof. We resolve the issue on the basis of a preponderance of evidence in the record. Assuming arguendo that petitioners do have the burden of proof under section 7491, we still conclude, on the basis of evidence in the record, that petitioners recognized no discharge of indebtedness income with regard to the BankTEXAS loan in 1997.

B.    Did the Insolvency Exception Apply in 1997?

Petitioners concede that BankTEXAS forgave their loan of $32,000 in 1997.  The parties agree that resolution of the issue as to whether petitioners must include this income in 1997 depends on whether, immediately before BankTEXAS forgave their loan on April 20, 1997, petitioners were insolvent within the meaning of sections 108(a)(1)(B) and (d)(3) (insolvency exception).

Petitioners contend that the evidence demonstrates that their liabilities exceeded the fair market value (FMV) of their assets in 1997.  Additionally, petitioners argue that further evidence, such as the foreclosure on their house and BankTEXAS's unsuccessful attempts to collect on the loan, support a conclusion that they were insolvent.  Respondent argues that petitioners were not insolvent and that section 108(a)(1)(B) does not apply.  Respondent contends that petitioners' proof of the FMV of their assets in 1997 was "incomplete and highly questionable" because it was based on petitioners' memory.

Section 61(a) defines the term "gross income" broadly to mean all income from whatever source derived, including income from discharge of indebtedness.  Sec. 61(a)(12).  Section 108(a) provides certain exceptions to section 61(a)(12).  See Gitlitz v. Commissioner, 531 U.S. 206, 213 (2001).  Section 108(a)(1)(B) excludes from gross income any amount that otherwise would be

includable in gross income by reason of the discharge of indebtedness of the taxpayer if the discharge occurs when the taxpayer is insolvent. The amount of this income excluded under section 108(a)(1)(B) is not to exceed the amount by which the taxpayer is insolvent. Sec. 108(a)(3). The term "insolvent" is defined in section 108(d)(3) as:

> Insolvent.--For purposes of this section, the term "insolvent" means the excess of liabilities over the fair market value of assets. With respect to any discharge, whether or not the taxpayer is insolvent, and the amount by which the taxpayer is insolvent, shall be determined on the basis of the taxpayer's assets and liabilities immediately before the discharge.

A taxpayer claiming the benefit of the insolvency exception must prove: (1) With respect to any obligation claimed to be a liability, that, as of the calculation date, it is more probable than not that he will be called upon to pay that obligation in the amount claimed; and (2) that the total liabilities so proved exceed the FMV of his assets. Merkel v. Commissioner, 109 T.C. 463, 484 (1997), affd. 192 F.3d 844 (9th Cir. 1999).

We note section 108(e)(1) provides that, "there shall be no insolvency exception from the general rule that gross income includes income from the discharge of indebtedness" except as provided in section 108, eliminating any judicially created exceptions to the general rule of income from discharge of indebtedness. See Carlson v. Commissioner, 116 T.C. 87, 100 (2001).

Petitioners relied upon their oral testimony as evidence of the FMV of assets owned and liabilities owed in 1997 immediately prior to the discharge. Having observed petitioners' appearances and demeanors at trial, we find their testimony to be honest, forthright, and credible. Based upon this testimony, we find that petitioners owned approximately $8,500 in assets and owed $84,116 in liabilities. See Diaz v. Commissioner, 58 T.C. 560, 565 (1972) (basing analysis upon evaluation of the entire record and credibility of witnesses). Based on the entire record, we find that petitioners' liabilities exceeded the FMV of their assets when their loan was discharged to such an extent that no discharge of indebtedness income is recognized.

II. Accuracy-Related Tax Penalty

Respondent determined that petitioners are liable for the accuracy-related penalty under section 6662(a) due to a substantial understatement of tax. Section 6662(a) imposes a penalty in the amount of 20 percent on the portion of the underpayment to which the section applies. Relevant to this case, the penalty applies to any portion of the underpayment that is attributable to any substantial understatement of tax under section 6662(b)(2). As outlined in the above discussion, we hold that petitioners did not have $32,000 of income from discharge of indebtedness. Accordingly, we find that no understatement of tax

occurred.  We hold, therefore, that petitioners are not liable for the accuracy-related penalty.

In reaching our holdings herein, we have considered all arguments made, and to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for petitioners</u>.